UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDY DaCOSTA | : | NO.: 3:12-CV-01011-RNC |
| | : | |
| v. | : | |
| | : | |
| CITY OF DANBURY, MARK BOUGHTON, | : | |
| and VIRGINIA ALOSCO-WERNER | : | |
| | : | JUNE 23, 2013 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO QUASH NON-PARTY SUBPOENAS AND MOTION FOR SANCTIONS

The Defendants, the City of Danbury ("the City"), Mayor Mark Boughton and Virginia Alosco-Werner (collectively "the Defendants"), hereby respectfully file this memorandum of law in support of their motion for this court to order a Protective Order prohibiting the Plaintiff, Wendy DaCosta, from taking the depositions of Mayor Boughton and Ms. Alosco-Werner as well as fact witnesses Antonio Iadarola, Greg Pina and Carol DeSantie on June 24-28, 2013. To each deposition notice was attached a command to produce documents. Moreover, subpoenas have also been issued to non-party witnesses Mr. Pina and Ms. DeSantie, and thus, the Defendants also move to quash those subpoenas. Plaintiff has not provided sufficient notice of these depositions and subpoenas *duces tecum*. Pursuant to Rule 37(a)(5)(A), the Defendants also move this Court to order the Plaintiff to pay the costs associated with having to file this motion.

### I. BACKGROUND

Plaintiff instituted the instant complaint by writ and summons dated June 26, 2012 in the Superior Court for the State of Connecticut, Judicial District of Danbury. (**See DaCosta v. City of Danbury, DBD-CV12-6009923-S**). The Defendants removed the matter to this Court on July 12, 2012. (**Docket Entry No. 1**). Plaintiff alleges, *inter alia*, that she was unjustly terminated for harassing Mr. Iadarola, Director of the Department of Public Works for the City, over a

period of several years and after receiving several warnings.  The final event prompting immediate termination was a threatening telephone call from Mr. Pina, a friend of the Plaintiff's, to Mr. Iadarola which Plaintiff denies initiating.  Plaintiff claims that while she was terminated for harassment, Mayor Boughton allegedly harassed Carol DeSantie and was not terminated which constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment.[1]

In August 2012, the parties entered into a scheduling order, approved by this Court, mandating that discovery would close on June 30, 2013.  (**Docket Entry No. 12**).  Plaintiff immediately sent discovery requests to the Defendants, with which Defendants promptly complied, producing over 6500 documents.[2]  (**Affidavit of Johanna G. Zelman, Esq., ¶ 5, hereto attached as Exhibit A**).  On August 22, 2012, Attorney Maurer, Counsel for Ms. DaCosta, wrote to the undersigned stating that she "will be scheduling Iadarola, Alosco-Werner and Boughton for depositions shortly."  (**Id., ¶ 6; Letter from Maurer to Zelman dtd 8/22/13, hereto attached as Exhibit B**).  However, neither Atty. Maurer nor her associate, Christopher Avcollie, ever followed through.  (**Zelman Aff., ¶ 6**).

Plaintiff's Counsel did, however, find delay at every opportunity regarding every aspect of this case, most often waiting to the last minute before the deadline to request this Court to extend the deadline.  With regards to the pleadings, Plaintiff initially moved for an extension of time to oppose the Defendants' motions to strike and dismiss.  (**Docket Entry Nos. 21-22**).  However, rather than ever file a response, the Plaintiff amended her complaint.  (**Docket Entry Nos. 35**).  When Defendants again moved to strike and dismiss, Plaintiff again requested an extension of time.  (**Docket Entry Nos. 37 and 39**).  While Plaintiff did eventually object, the day before oral argument was set to take place, Plaintiff moved for a continuance.  (**Docket

---

[1] This allegation, among many others, is subject of a motion to dismiss pending before this Court.
[2] Plaintiff, through her attorney, had already served a FOIA request on the City in June 2012 prior to instituting legal proceedings.  (**Zelman Aff., ¶ 5**).  Plaintiff's production requests were identical to Atty. Maurer's FOIA request.

2

**Entry No. 57**). Moreover, Plaintiff Counsel informed the undersigned on or about February 13, 2013 that the complaint would be amended a second time. (**Zelman Aff., ¶ 7**). Plaintiff's Counsel confirmed with the undersigned on March 5, 2013 that Plaintiff intended to amend. (**Id.; Email from Maurer to Zelman dtd 3/5/13, hereto attached as Exhibit C**). Thus, the Defendant asked this Court to again continue oral argument on the Defendants' motion to dismiss until they could refile that motion after the Plaintiff filed her second amended complaint. (**Zelman Aff., ¶ 7**). Additionally, the Defendants were also delayed in taking the Plaintiff's continued deposition as a result. (**Id.**). Plaintiff did not actually file the Second Amended Complaint until April 12, 2013 (**Docket Entry No. 42**), two months after Plaintiff Counsel indicated Plaintiff's intent to do so.

Moreover, as fully set forth in the Defendants' motion to compel and supporting memorandum of law and attached exhibits and now incorporated as if fully set forth herein, Plaintiff's delays in discovery have been equally egregious. (**Docket Entry No. 68**). It took that motion to compel to finally get Plaintiff to comply on May 22, 2013, six months after discovery was initially propounded on her. (**Zelman Aff., ¶ 8**).

At issue now are three (3) notices of deposition *duces tecum* (**hereto attached as Exhibits D, E and G**) and two (2) subpoenas *duces tecum* (**hereto attached as Exhibits F and H**) provided to the Defendants via email from Atty. Avcollie at 4:33 pm on Friday, June 21, 2013 with just one week left in discovery. (**Zelman Aff., ¶ 10; Email from Avcollie to Zelman dtd 6/21/13, hereto attached as Exhibit I**). Based on these notices and subpoenas, Plaintiff seeks to conduct the following depositions and produce the following documents:

- Mayor Mark Boughton, Monday, June 24, 2013 at 10 am
    1. All documents or electronic records not previously produced in connection with earlier discovery or FOIA requests related to this matter regarding

3

any communications between Mark Boughton and any City of Danbury employee, including without limitation Mark Boughton, regarding Wendy DaCosta.

2. All phone records including without limitation text messages and cellular phone billing statements evidencing any communications between Mark Boughton and Carol DeSanti.

3. All phone records of any cellular phone accounts paid for by the City of Danbury and used by Mark Boughton from January 1, 2002 through January 1, 2007.

4. All phone records of any cellular phone accounts paid for by the City of Danbury and used by Antonio Iadarola from January 1, 2002 through January 1, 2007.

5. All documents or electronic records not previously produced in connection with earlier discovery or FOIA requests regarding Carol DeSanti.

(**Exhibit D**)

- Director of Public Works, Antonio Iadarola, Tuesday, June 25, 2013 at 9:30 am

    1. Phone records including without limitation text messages and cellular phone billing statements evidencing any communications between Antonio Iadarola and Wendy DaCosta from January 1, 2006 through August 18, 2011.

    2. Emails or printouts of emails, including without limitation those emails stored or archived by any email provider, evidencing any communications between Antonio Iadarola and Wendy DaCosta from January 1, 2006 through August 18, 2011.

    3. Any documents or electronic records concerning any communication between Antonio Iadarola and Wendy DaCosta from January 1, 2006 through August 18, 2011.

(**Exhibit E**)

- Fact witness Greg Pina, Tuesday, June 25, 2013 at 1:30 pm

    1. Phone records including without limitation text messages and cellular phone billing statements evidencing any communications between Greg Pina and any City of Danbury employee without limitation, including Mark Boughton and Wendy K. DaCosta, from July 1, 2011 through September 1, 2011.

2. Emails or printouts of emails, including without limitation those emails stored or archived by any email provider, evidencing any communications between Greg Pina and any City of Danbury employee without limitation, including Mark Boughton and Wendy K. DaCosta, from July 1, 2011 through September 1, 2011.

3. Any documents or electronic records concerning any communication between between Greg Pina and any City of Danbury employee without limitation, including Mark Boughton and Wendy K. DaCosta, from July 1, 2011 through September 1, 2011.

(**Exhibit F**)

- Director of Human Resources Virginia Alosco-Werner, Wednesday, June 26, 2013

    1. All documents or electronic records not previously produced in connection with earlier discovery or FOIA requests related to this matter regarding any communications between Virginia Alosco-Werner and any City of Danbury employee, including without limitation Mark Boughton, regarding Wendy DaCosta.

    2. All phone records including without limitation text messages and cellular phone billing statements evidencing any communications between Mark Boughton and Carol DeSanti.

    3. All phone records of any cellular phone accounts paid for by the City of Danbury and used by Mark Boughton from January 1, 2002 through January 1, 2007.

    4. All phone records of any cellular phone accounts paid for by the City of Danbury and used by Antonio Iadarola from January 1, 2002 through January 1, 2007.

    5. All documents or electronic records not previously produced in connection with earlier discovery or FOIA requests regarding Carol DeSanti.

(**Exhibit G**)

- Former Director of Personnel Carol DeSantie, Friday, June 28, 2013 at 10 am

    1. Phone records including without limitation text messages and cellular phone billing statements evidencing any communications between Mark Boughton and Carol DeSanti from January 1, 2002 through January 1, 2007.

> 2. Emails or printouts of emails, including without limitation those emails stored or archived by any email provider, evidencing any communications between Mark Boughton and Carol DeSanti from January 1, 2002 through January 1, 2007.
>
> 3. Any documents or electronic records concerning any communication between Carol DeSanti and any employee of the City of Danbury from January 1, 2002 through January 1, 2007.

(**Exhibit H**).

The documents that the Plaintiff seeks to have produced by way of these depositions are extensive. While Plaintiff offers the caveat that the Defendants need not produce documents already provided, Plaintiff's production requests still necessitates an extensive search. Moreover, they are without any significant limitations and are extremely broad.

## II.     LEGAL STANDARD

Discovery is permitted as to "any nonprivileged matter that…appears reasonably calculated to lead to the discovery of admissible evidence." This rule applies to depositions. Rules 26(c) and 45(c)(3) also serve to limit discovery provided by deposition.

### A. Protective Order Pursuant to Rule 26(c)(1)

Rule 26(c)(1) sets forth that the Court "may, for good cause" issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense…[by] (A) forbidding the disclosure or discovery…." Rule 26 gives the Court power to protect parties from discovery abuses and the Court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34, 36 (1984). "Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purpose of…[R]ule [26(c)]." 8 Charles Alan Write, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2036, at 489 (2d ed.1994).

6

"The party seeking a protective order bears the burden of establishing that good cause for the order exists. The existence of good cause for a protective order is a factual matter to be determined from the nature and character of the information sought, and cannot be established by stereotyped and conclusory statements. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." (Internal citations, quotation marks and alterations omitted). Freydl v. Meringolo, 09 CIV 07196 BSJ KNF, 2011 WL 134972 (S.D.N.Y. Jan. 7, 2011) (quoting, Duling v. Gristede's Operating Corp., 226 F.R.P. 66, 71 (S.D.N.Y. 2010); 8A Charles Alan Wright, Arthur Miller & Richard L. Marcus, Federal Practice and Procedure § 2035 (3d ed.2010)); accord Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n. 16 (1981) (good cause established were moving party makes "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements"); In re Agent Orange Prod. Liab. Litig., 821 F.2d 961 (2d Cir. 1987) (good cause required for issuance of protective order).

### B. Motion to Quash Pursuant to Rule 45(c)(3)(A)

Rule 45(c)(3)(A) mandates that "[o]n timely motion, the issuing court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply;…or (iv) subjects a person to undue burden."

> It is well established that the burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant. Determination of issues of burden and reasonableness is committed to the sound discretion of the trial court.
>
> Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) depends upon 'such factors as relevance and the burden imposed. These factors must be "balanced and assessed in the context of an individual subpoena. Because the burden is on the party seeking to quash a subpoena that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance. And inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony. A subpoena that

> "pursues material with little apparent or likely relevance to the subject matter, however, is likely to be quashed as unreasonable even where the burden of compliance would not be onerous.

(Internal citations, quotation marks and alterations omitted). Kirschner v. Klemons, 99 CIV. 4828 (RCC), 2005 WL 1214330 at * 2 (S.D.N.Y. May 19, 2005)

### III. LAW AND ARGUMENT

Rule 30(b)(1) governs notice prior to a deposition:

> A party who wants to depose a person by oral questions **must give reasonable written notice to every other party**. The notice must state the time and place of the deposition and, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs.

(Emphasis added). This Rule "requires reasonable written notice to opposing counsel before the taking of an oral deposition." F.A.A. v. Landy, 705 F.2d 624, 634 (2d Cir. 1983). Reasonable notice is also required by Rule 45(c)(3)(A)(i). "'Reasonable' in this context may be defined as 'fair, proper, or moderate under the circumstances'." Brockway v. Veterans Admin. Healthcare Sys., 3:10-CV-719, 2011 WL 1459592 at * 3 (D. Conn. Apr. 15, 2011) (quoting *Black's Law Dictionary* (9th ed.2009)) (holding that four (4) business days' notice of deposition was not "reasonable"). Rule 45(c)(3)(A)(iv), as described above, further provides that a subpoena *duces tecum* must be quashed if it imposes an undue burden.

Given that these notices were provided just days before discovery is set to end and with the most minimal notice possible and requesting extensive document production, these notices are on their face not timely, unduly burdensome and unreasonable. Plaintiff cannot wait until just nine (9) calendar days and five (5) business days before discovery is set to end and expect that the Defendants and their attorney will clear their schedules for an entire week, especially where, as here, Plaintiff has significantly delayed discovery and proceedings to date. See Cole v. City of New York, 10 CIV. 5308 BSJ KNF, 2012 WL 1138570 at * 4-5 (S.D.N.Y. Apr. 5, 2012)

(holding that providing only 3 and 5 days' notice to conduct depositions and produce documents at those depositions was not "reasonable" given that plaintiff unjustly delayed discovery and waited until nine (9) days before discovery was set to end to issue deposition notices and subpoenas). Plaintiff clearly contemplated taking these depositions in August 2012 but simply did not follow through. The fact that she contemplated these depositions at that time so early in the proceedings, before any answer was even required by the scheduling order, negates any argument that Plaintiff was prevented from taking these depositions because the Defendant has not yet answered.

Each request is further analyzed below:

**A. <u>This Court must Issue a Protective Order Prohibiting the Plaintiff from Taking the Deposition of Mayor Mark Boughton.</u>**

Plaintiff noticed the deposition of Mayor Boughton at 4:33 pm on Friday, June 21, 2013 for 10 am on Monday, June 24, 2013. This amounts to well less than one business days' notice. There is no feasible way in which the undersigned could adequately prepare the Mayor for his deposition on such short notice. Additionally, as set forth above, Mayor Boughton is commanded to, *inter alia*, conduct an extensive search for all communications between him and any City employee regarding the Plaintiff, phone records for any communications between him and Carol DeSantie and all of his phone records for a five year period. All of these are requested regardless of the subject matter of the communications or their relevancy to Plaintiff's claims. Not only is less than 24 hours' notice not reasonable on its face and somewhat disrespectful of the Mayor and his very busy schedule, but it certainly does not give the Mayor sufficient time to comply with Plaintiff's request for documents. Moreover, asking for all communications is overly broad, unduly burdensome and not reasonably limited to time or scope. Likewise, there is no reason why the Plaintiff needs all employment information related to Ms. DeSantie.

Finally, both Mayor Boughton and the undersigned are unavailable to attend this deposition on such short notice. Both Mayor Boughton and the undersigned have other meetings and events scheduled for Monday, June 24, 2013 that would preclude the deposition from going forward on that date. (**Zelman Aff., ¶ 11**).

### B. This Court must Issue a Protective Order Prohibiting the Plaintiff from Taking the Deposition of Mayor Mark Boughton.

Mr. Iadarola's deposition was noticed for Tuesday, June 25, 2013 at 9:30 a.m. Given that Mayor Boughton's deposition is scheduled for the day before and the very short notice – one business day – this notice would not provide the undersigned with sufficient time to prepare Mr. Iadarola. Additionally, very broad production requests are attached, including a request for all correspondences between Mr. Iadarola and the Plaintiff. Given that the Plaintiff was the Mayor's secretary and Mr. Iadarola the Director of Public Works, the communications between them would be extensive and most wholly unrelated to Plaintiff's litigation. The notice has not given Mr. Iadarola sufficient time to comply and asking for all communications is overly broad, unduly burdensome and not reasonably limited to time or scope. Finally, neither Mr. Iadarola nor the undersigned are available on Tuesday, June 25, 2013. (**Zelman Aff., ¶ 11**).

### C. This Court must Quash the Subpoena Commanding Greg Pina to a Deposition and Producing Documents.

Plaintiff has issued a subpoena to take the testimony of Mr. Pina on Tuesday, June 25, 2013 at 1:30 p.m. As stated above, this is not sufficient notice for the Defendants to fully and properly prepare for this deposition. Moreover, the undersigned in unavailable that day because of a scheduling conflict. (**Zelman Aff., ¶ __**).

10

### D. This Court must Issue a Protective Order Prohibiting the Plaintiff from Taking the Deposition of Virginia Alosco-Werner.

Plaintiff seeks to depose Ms. Alosco-Werner at 2 pm on Wednesday, June 26, 2013. This too is not reasonable notice for this deposition. Given the three depositions the Plaintiff plans to take in the two days before Ms. Alosco-Werner's and the undersigned's schedule during those days, there is no possible way that Defense Counsel to properly prepare Ms. Alosco-Werner for this deposition. Moreover, the production requests are all identical to those made on Mayor Boughton. As set forth above, they are unreasonable, unduly burdensome and not limited in time and scope, nor are they all relevant.

### E. This Court must Quash the Subpoena Commanding Carol DeSantie to appear at a Deposition and Producing Documents.

The Defendants have been notified that Ms. DeSantie will be subpoenaed to her deposition on Friday, June 28, 2013 at 10 a.m. This is unreasonable for several reasons. First, the undersigned is unavailable at that time for this deposition. (**Zelman Aff., ¶ 11**). Second, it requires the witness, who lives in Syosset, NY on Long Island, to travel nearly 100 miles during rush hour to attend a deposition first thing in the morning in Connecticut. Third, it does not provide sufficient notice for the Defendants to prepare for this deposition, especially given the extensive deposition schedule that the Plaintiff proposes.

## IV. CONCLUSION

Wherefore, for all those reasons set forth herein, this Court should enter a protective order preventing the depositions of Mayor Boughton, Ms. Alosco-Werner, Mr. Iadarola, Mr. Pina and Ms. DeSantie and quash the subpoenas issued to Mr. Pina and Ms. DeSantie. Additionally, since the notice provided for these depositions is patently unreasonable, the Defendant seeks this Court to order Plaintiff to pay for the costs of this motion.

CITY OF DANBURY, MARK BOUGHTON,
and VIRGINIA ALOSCO-WERNER


By   /s/ Johanna G. Zelman
   Johanna G. Zelman (ct26966)
   Rose Kallor, LLP
   750 Main Street, Suite 606
   Hartford, CT  06103
   (860) 748-4660
   (860) 241-1547 (Fax)
   E-Mail:  jzelman@rosekallor.com

## **CERTIFICATION**

      This is to certify that a copy of the foregoing was filed electronically to the following counsel and mailed, via first class mail, postage prepaid, to the following pro se plaintiff named below on this 22nd day of June, 2013. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Elizabeth Seieroe Maurer
Maurer & Associates, P.C.
871 Ethan Allen Highway, Suite 202
Ridgefield, CT 06877

                                                    /s/ Johanna G. Zelman
                                                  Johanna G. Zelman