UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDY DaCOSTA | : | NO.: 3:12-CV-01011-RNC |
| | : | |
| v. | : | |
| | : | |
| CITY OF DANBURY and | : | |
| MARK BOUGHTON | : | NOVEMBER 12, 2013 |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS'
MOTION FOR PROTECTIVE ORDER**

The Defendants, the City of Danbury ("the City" or "Danbury") and Mark Boughton

("the Mayor" or "Mayor Boughton") (hereinafter collectively "the Defendants"), hereby

respectfully file this memorandum of law in support of their motion for protective order pursuant

to Fed. R. Civ. P. 26(c) prohibiting the Plaintiff and her attorneys from Maurer & Associates,

P.C. from further disseminating any information or documents that was learned and/or obtained

through the course of discovery in the instant matter to outside parties, including but not limited

to the media. ***Attorney Maurer has admitted that she did, in fact, with the permission of her***

***client, the Plaintiff Ms. DaCosta, provide the deposition transcripts in this case to blogger***

***Alfonso Robinson and Danbury News Times political reporter Dirk Perrefort***. (**Exhibit A6**).

The City intends on complying with the News Times' FOIA requests and providing redacted

copies of the transcripts in due course.

**I.     BACKGROUND**

Plaintiff is the former Executive Secretary to Mayor Boughton; she was terminated on or

about August 18, 2011. (**Sec. Am. Compl., ¶¶ 17, 48**). After she initiated the instant matter in

Superior Court, it was timely removed to this Court on or about July 17, 2012. (**Docket Entry**

**No. 1**). Plaintiff alleges, *inter alia*, that in terminating her employment, the Defendants violated

her rights to Due Process and Equal Protection under the Fourteenth Amendment, interfered with

and retaliated against her for exercising her rights under the Family and Medical Leave Act ("FMLA") and committed the common law tort of defamation.[1]  (**Sec. Am. Compl.,** *generally*). In making her Equal Protection claim, Plaintiff alleges that she was treated differently than similarly situated males in that she was terminated for sexual harassment while male employees were not.  (**Id., Third and Fourth Counts**).  She names several similarly situated employees and former employees, and includes an unsubstantiated allegation that Mayor Boughton sexually harassed former Personnel Director Carol DeSantie.  (**Id., ¶ 80(A)**).[2]

As can be reflected by the Docket, discovery has not been smooth in this case and has required Court intervention to protect the Defendants from discovery abuses by Attorney Maurer.  (**Docket Entry Nos. 94, 102, 114**).  In fact, these abuses resulted in sanctions being issued against her.  (**Id., 124**).

Nevertheless, a large number of depositions have been taken in this matter.  Ms. DaCosta's deposition spanned two days, February 13, 2013 and June 17, 2013.  (**Affidavit of Johanna G. Zelman, ¶ 4, hereto attached as Exhibit A**).  Defendants also took the deposition of Plaintiff's economic expert, Walter Dolde, on August 23, 2013, and fact witness Julio Lopez on July 9, 2013 and July 29, 2013.  (**Id.**).  Plaintiff took the following depositions:

- Virginia Alosco-Werner, Director of Human Resources, City of Danbury, on June 26, 2013 and June 27, 2013;

- Detective Roger Brooks on June 27, 2013;

- Greg Pina, fact witness, on September 9, 2013;

- Carol DeSantie, former Director of Personnel, City of Danbury, on September 12, 2013;

---

[1] Plaintiff has since withdrawn her claims against Virginia Alosco-Werner and for First Amendment retaliation. (**Docket Entry Nos. 123 and 126**).
[2] A full recitation of the facts as alleged by the Plaintiff are set forth in the Defendants' memorandum of law in support of the Defendants' third motion to dismiss.  (**Docket Entry No. 81-1**).

- Antonio Iadarola, fact witness, on September 13, 2013;

- Mayor Mark Boughton on September 17, 2013; and

- Ward Curran, Ph.D., Defendants' economic expert, on September 19, 2013.

(**Id.**).  These transcripts will all be made available for this Court's *in camera* review upon request.

On September 9, 2013, just prior to the depositions of Ms. DeSantie, Mr. Iadarola and Mayor Boughton, Laszlo Pinter, Deputy Corporation Counsel for the City of Danbury, received six (6) requests via email from Dirk Perrefort, Political Reporter at the Danbury News Times. (**Affidavit of Laszlo Pinter, ¶ 4, hereto attached as Exhibit B**).  The first five (5) were requests made pursuant to the Freedom of Information Act ("FOIA") for:  "the transcripts of any and all depositions that have been or will be taken in the case of Wendy DaCosta versus the City of Danbury" (**FOIA Request 1, hereto attached as Exhibit C**); "a transcript of the deposition of Julio Lopez given as part of the Wendy DaCosta lawsuit" (**FOIA Request 2, hereto attached as Exhibit D**); "a transcript of the deposition of Wendy DaCosta given as part of her lawsuit filed against the City" (**FOIA Request 3, hereto attached as Exhibit E**); "a transcript of the Walter Dolde deposition held as part of the ongoing lawsuit Wendy DaCosta has brought against the City" (**FOIA Request 4, hereto attached as Exhibit F**); and "a transcript of the deposition given by Roger Brooks given as part of the Wendy DaCosta lawsuit against the [C]ity" (**FOIA Request 5, hereto attached as Exhibit G**).  The final request was "a formal request to attend the deposition of Carol DeSantie scheduled for Thursday, Sept. 12 that's being held as part of the Wendy DaCosta lawsuit brought against the [C]ity."  (**Deposition Request, hereto attached as Exhibit H**).

As to the request to attend Ms. DeSantie's deposition, pursuant to Local Rule 26(a), on September 10, 2013, Attorney Pinter informed Mr. Perrefort that he would not be permitted to attend the deposition.  (**Pinter Aff., ¶ 5; Reply to Deposition Request, hereto attached as Exhibit I**).  In that same email, Attorney Pinter also told Mr. Perrefort that he would "reply to your other requests concerning disclosure of depositions separately." (**Id.**).  By way of separate email that same day, Attorney Pinter requested that Mr. Perrefort permit the City 30 days to review the requests and examine the relevant applicable laws to ascertain whether the transcripts were subject to the FOIA.  (**Pinter Aff., ¶ 6; Reply to FOIA Request 1 dtd 9/10/13, hereto attached as Exhibit J**).

Attorney Pinter followed up with Mr. Perrefort on October 9, 2013 requesting additional time to fully analyze all matters.  (**Pinter Aff., ¶ 7; Reply to FOIA Request 1 dtd 10/9/13, hereto attached as Exhibit K**).  The decision was thereafter made that the transcripts would be released pursuant to the FOIA, taking into consideration all of the FOIA's exceptions and abiding by them and making redactions accordingly.  (**Affidavit of Mayor Boughton, ¶ 6, hereto attached as Exhibit FF**).  This is very important since the transcripts contain information such as personal addresses and telephone numbers of third-party witnesses, dates of birth, medical and other health related information of both the Plaintiff and third parties, information obtained through polygraph testing and information regarding minor children.  (**Zelman Aff., ¶ 6**).  The City thereafter began to review each transcript to redact information as required by the FOIA.  (**Boughton Aff., ¶ 6**).

On October 24, 2013, an article written by Dirk Perrefort appeared in the Danbury News Times.  (**Article dtd 10/24/13, hereto attached as Exhibit L**).  It describes that Mayor Boughton, Mr. Iadarola and Ms. DeSantie, as well as "others" "have been subpoenaed in recent

4

months" for their depositions.  (**Id.**).  As evidenced by that article, Attorney Maurer made several comments to Mr. Perrefort regarding the Defendants' response to the FOIA request as well as testimony provided by witnesses during their depositions.  She intimated that Danbury was lying when Danbury stated that it did not yet have all transcripts in its possession.[3]  (**Id.**). Additionally, according to the article, Attorney Maurer commented that Ms. "DeSantie admitted to not having any of the requirements necessary to serve as Danbury's human resources director when she was hired for the job" and that "'when asked about it she agreed that she didn't have the background.' 'I think that's pretty telling.'"  (**Id.**).  This statement, in fact, is not true, and, moreover, is irrelevant as to whether Plaintiff's termination was a violation of her rights to Equal Protection.

> ***Attorney Maurer admits that she then, with the permission of her client, provided the transcripts to "reporter," presumably blogger Alfonso Robinson and Mr. Perrefort.***  (**Exhibit A6**).

A few days later, on October 31, 2013, a blogger, Alfonso Robinson, began a series of several posts that have been cross posted to the Danbury News Times.  (**News Times Electronic Index, hereto attached as Exhibit M**).  On Thursday, October 31, 2013 at 4:16 p.m., Mr. Robinson blogged that he had attained copies of the transcripts of Mayor Boughton's, Mr. Lopez's, Mr. Iadarola's and Ms. DeSantie's depositions.  (**HatCityBLOG, "Boughton sexual harassment deposition obtained," hereto attached as Exhibit N**).  Additionally, he wrote that the News Times also had copies of these transcripts.  (**Id.**).

---

[3] In her letter dated November 12, 2013, Attorney Maurer also states her belief that Danbury has not released the transcripts "to avoid scrutiny by the taxpayers who are funding this very expensive litigation" and for other untoward reasons.  All such beliefs should be dispelled by the fact that Danbury has agreed to release the transcripts under FOIA once all information exempt from disclosure under FOIA has been redacted.  There has never been any intent to withhold these transcripts from public view, only to withhold private and privileged information.

On Sunday, November 3, 2013 at 9:11 p.m., Mr. Robinson posted a message stating "Coming Soon…" and that the public should "[p]repare to be outraged…."  (**HatCityBLOG Homepage, pp. 5-6, hereto attached as Exhibit O**).  He then posted the cover pages of the Boughton, DeSantie, Iadarola and Lopez depositions, apparently to prove he had them.  (**Id.**).  Using the website www.scribd.com, Mr. Robinson then posted the entirety of Volume II of Mr. Lopez's deposition,[4] Mayor Boughton's deposition and Ms. DeSantie's deposition.[5]  (**Affidavit of Melinda A. Powell, hereto attached as Exhibit P**).  On Wednesday, November 6, 2013 at 11:01 a.m., Mr. Robinson posted a blog entitled "Wendy DaCosta on Boughton" which contained a single excerpt from Volume I of Wendy DaCosta's deposition.  (**HatCityBLOG, "Wendy DaCosta on Boughton…," hereto attached as Exhibit Q**).  On Friday, November 8, 2013 at 2:15 p.m., he posted another blog entitled "Boughton 'infatuated' with DeSantie?" in which he posted an excerpt from Ms. DeSantie's deposition, along with the statement "MUCH more to come… prepare to be outraged."  (**Exhibit O, p. 1**).

No transcript has yet been provided by the Defendants or their counsel to either Mr. Robinson or the News Times by the Defendants.  (**Zelman Aff., ¶ 8; Boughton Aff., ¶ 8; Pinter Aff., ¶ 8; Affidavit of Dianne Rosemark, Esq., ¶ 4, hereto attached as Exhibit R; Affidavit of Virginia Alosco-Werner, ¶ 4, hereto attached as Exhibit S**).  This leaves only one conclusion: either the Plaintiff or her attorney provided them in an effort to litigate this case

---

[4] In response to an affidavit by Mr. Lopez that was disclosed to the Defendants on June 25, 2013, just five (5) days before the discovery deadline, the Defendants sought permission of this Court to depose Mr. Lopez out of time. (**Docket Entry No. 102**).  This motion was granted by this Court on July 1, 2013.  (**Id., 107**).  Defendants promptly took Mr. Lopez's deposition on July 9, 2013.  (**Zelman Aff., ¶ 4**).  During that deposition, Mr. Lopez's character and veracity, as well as the admissibility and truthfulness of his testimony, was challenged.  Attorney Maurer did not conduct a cross of Mr. Lopez until July 29, 2013 during which she attempted to rehabilitate him.  Thus, it is curious that only Volume II of Mr. Lopez's deposition was posted since the testimony hurting Plaintiff's claims was made during the first day of Mr. Lopez's deposition.  While this Court cannot control how the media shapes the Plaintiff's case in the public eye, it does have control over the attorneys.  To the extent that Attorney Maurer only released the second volume of testimony, it shows just how ingenuous she is and how she is trying to play the media for her own gain.

[5] Scribd.com has since removed the transcripts – which were available at www.scribd.com/doc/99842107/Wendy-DaCosta-Boughton – in response to notification by Defense Counsel.  (**Powell Aff., ¶¶ 4-5, Exhibits 1, 2**).

through the media, embarrass and humiliate Mayor Boughton, Mr. Iadarola and Ms. DeSantie and/or extort a settlement.  Moreover, her release has caused embarrassment to many third parties, whose personal medical information is contained in those depositions, their children's names, some dates of birth, private addresses and telephone numbers, polygraph information, etc.

## II.     LEGAL STANDARD

Rule 26(c)(1) permits the Court to enter a protective order, which states, in relevant part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment [or] oppression…."  It further provides that the Court may "require[e] that a deposition be sealed and opened only on court order."  <u>See</u> Rule 26(a)(1)(F).  Courts have issued such protective orders even after the deposition transcripts at issue have already been released.  <u>See Stern v. Crosby</u>, 529 F.Supp.2d 417 (S.D.N.Y. 2007) (issuing protective order and sealing deposition transcript after content was already "leaked" by Plaintiff's counsel).

Rule 26 gives the Court power to protect parties from discovery abuses and the Court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required."  <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 34, 36 (1984).  "Thus, a court may be as inventive as the necessities of a particular case required in order to achieve the benign purpose of…[R]ule [26(c)]."  8 Charles Alan Write, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2036, at 489 (2d ed.1994).

It is the burden of the moving party to prove that good cause exists for the issuance of a protective order.  <u>See Schoolcraft v. City of New York</u>, 2013 U.S. Dist. LEXIS 121948 at *9-10 (S.D.N.Y. Aug. 27, 2013).[6]

---

[6] <u>Schoolcraft</u> recognizes that there is a split of authority on whether the moving party must show simply "good cause" or a more particularized and specific demonstration of significant harm.  <u>See Schoolcraft</u>, 2013 U.S. Dist.

### III.    LAW AND ARGUMENT

Good cause is shown for entering an order or protection.

In <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20 (1984), the United States Supreme Court set forth the precedent for entering a protective order prohibiting dissemination of information and material obtained through the discovery process.  In that case, like the one at issue before this Court, the Washington Superior Court issued an order prohibiting Seattle Times from using any material obtained through pretrial discovery rules[7] from the other party.  Like Plaintiff likely will in the instant case, Seattle Times argued that such a protective order would be a prior restraint on the freedom of speech and, thus, in violation of the First Amendment.[8]  <u>See id.</u> at 31.

The U.S. Supreme Court did not agree.  It first held that pretrial discovery is not subject to public access like "judicial documents:"

> At the outset, it is important to recognize the extent of the impairment of First Amendment rights that a protective order, such as the one at issue here, may cause. As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes. As the Rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations.

> Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

---

LEXIS 121948 at *9-10.  <u>Schoolcraft</u> held that "good cause" is sufficient because Second Circuit has not noted the specificity requirement and that this requirement is usually only imposed where a protective order is sought to prevent business injury.  <u>See id.</u> at *10.

[7] The case was certified from the State of Washington.  As noted by the U.S. Supreme Court, Washington's rules of civil procedure mimic the federal ones.  <u>Rhinehart</u>, 467 U.S. at 29.

[8] For this reason, the Defendants have not moved for an overall "gag order" on the Plaintiff and her attorneys.  <u>See</u> <u>Schoolcraft</u>, 2013 U.S. Dist. LEXIS 121948 (distinguishing between an impermissible "gag order" and a permitted protective order).

Id. at 32-33; see SEC v. TheStreet.com, 273 F.3d 222, 233 (2d Cir 2001) (holding that deposition transcripts are not "judicial documents" subject to public access); U.S. v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) (same); see also Local Rule 30(a) ("Depositions on oral examination on written interrogatories are deemed to constitute private proceedings which the public is not entitled to attend. Any person other than the witness being deposed, the parties to the action, the parent of a minor deponent, counsel for the witness or any party, or any person who has been disclosed by any party as an expert witness in the case shall, at the request of counsel for any party, or the witness, be excluded from the hearing room while the deposition on any person is being taken.").[9]

The Supreme Court further took into consideration that the broad discovery rules could lead to the revelation of very private information that should be shielded from the eyes of the public:

> Finally, it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. As in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes. In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context. Therefore, our consideration of the provision for protective orders contained in the Washington Civil Rules takes into account the unique position that such orders occupy in relation to the First Amendment.
>
> Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression. The Washington Civil Rules enable parties to litigation to obtain information "relevant to the subject matter involved" that they believe will be helpful

---

[9] The Defendants do recognize, as they must, that FOIA also must play a role that it would not play if the parties were all private citizens.  Here, as a government agency, the Defendants understand that they are subject to FOIA.  While the Defendants do concede *for purposes of this matter only* that the deposition transcripts *may* be subject to disclosure under the FOIA, that does not permit the Plaintiff and/or her attorney to openly share the depositions and all of their content with the public, especially where, as here, those depositions contain highly sensitive and personal information about third parties to this suit.

in the preparation and trial of the case. Rule 26, however, must be viewed in its entirety. Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.

There is an opportunity, therefore, for litigants to obtain -- incidentally or purposefully -- information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. ….[W]hether or not the Rule itself authorizes a particular protective order, we have no question as to the court's jurisdiction to do this under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.  The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders.

We also find that the provision for protective orders in the Washington Rules requires, in itself, no heightened First Amendment scrutiny. To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. The Legislature of the State of Washington, following the example of the Congress in its approval of the Federal Rules of Civil Procedure, has determined that such discretion is necessary, and we find no reason to disagree. The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

(Internal citations, quotation marks and alterations omitted).  Id. at 31-36; see also Stern v. Crosby, 529 F.Supp.2d 417, 420 (S.D.N.Y. 2007) (citing Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006) ("The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public:"  (1) "the documents are indeed judicial documents to which the public has a presumptive right of access;" (2) "the weight of the presumption;" and (3) "balance competing factors against [the

weight of the presumption].")[10]  This is consistent with the Rule 5.2(a), which specifically

protects individuals' privacy by requiring redaction of social security numbers, dates of birth,

minor children's names, tax-identification numbers and financial account numbers before e-

filing with the Court.  <u>See also</u> Local Rule 5(e)8.

It is likewise consistent with Rule 5(d), which provides, in relevant part, that "disclosures

under Rule 26(a)(1) or (2) and [depositions, interrogatories, requests for documents or tangible

things or to permit entry onto land and requests for admission] must not be filed [with the

Court]…."  <u>See also</u> Local Rule 5(f).  Interestingly, prior to a change in Rules 5(d) and 26(a)(4)

in 2000, it was required under the Federal Rules that discovery material be filed in Court.  Many

pre-2000 decisions rely on these requirements and, therefore, hold that deposition transcripts are

"judicial documents" subject to public access.  (**Rule 5 and 26, year 1999, hereto attached as**

**Exhibit T**).  The change to the rules, especially Rule 5(d) which now as amended specifically

prohibits filing of discovery material, shows the legislature's intent to keep discovery material

from public view until used in the proceedings.  Moreover, even where used in the proceedings,

only those parts specifically relevant to the proceeding at issue is to be filed, <u>see</u> Local Rule

5(f)2, further exemplifying the protection given to discovery material even when used in a

judicial proceeding.

Thus, as explained by one court in a similar situation as the one at bar, and relying

on <u>Rhinehart</u>, a protective order "may be issued provided (i) the order is limited to the context of

---

[10] Here we need not move past prong (1) since it is clear from <u>Rhinehart</u> that the documents are not "judicial documents" and, therefore, no presumption of public access is present.  Even if there was a presumption of public access, however, the presumption is low since not one of the transcripts has yet even been used in the proceedings. <u>See</u> <u>Stern</u>, 529 F.Supp.2d at 422.  Moreover, there are many competing interests that far outweigh any presumption of public access.  As fully described in this memorandum of law, Plaintiff is seemingly attempting to use the media to try her case against a prominent Connecticut politician, Mayor Boughton.  This lawsuit is not about Mayor Boughton's political views or his campaign.  It is about whether Plaintiff's conduct in stalking and harassing a fellow employee is sufficient to warrant her termination.  Moreover, the privacy interests of third party witnesses must be protected at all costs.  Plaintiff does not have the right to embarrass former employees by disclosing very private and personal information about them simply because she has brought suit against their former employer.

pretrial civil discovery, (ii) the order does not restrict the dissemination of information if gained

from other sources, and (iii) there is a showing of good cause as required by Rule

26(c)." Schoolcraft, 2013 U.S. Dist. LEXIS at * 8 (citing Rhinehart, 467 U.S. at 37).

Here, the Defendants are limiting what they seek in their protective order based on the

assumption ***for purposes of these proceedings only*** that the deposition transcripts ***may*** be subject

to FOIA and the limits of the First Amendment.  The Defendants seek only a protective order

narrowly tailored to prohibit the Plaintiff and her attorneys from disseminating information,

knowledge and materials gained through pretrial discovery, especially depositions.  This would

not prohibit dissemination of information obtained through other means as required

by Rhinehart.  Moreover, the Defendants assure this Court that once they have the opportunity to

finish their review of the subject deposition transcripts, redact them and provide notification,

where necessary, to current and former employees that information that could be considered

highly offensive to a reasonable person contained in those depositions will be provided to the

press absent objection, see Conn. Gen. Stat. §§ 1-210(b)(2) and 1-214(b) and (c), the Defendants

will provide the redacted deposition transcripts, without other comment, to the Danbury News

Times pursuant to the FOIA requests of Mr. Perrefort.  (**Boughton Aff., ¶ 6**).

As set forth herein, there is a showing of good cause for this order.

First, and foremost, without a protective order, the Defendants, and more importantly,

third parties to this action, could suffer annoyance, embarrassment, oppression and/or undue

burden from the dissemination of discovery materials and information obtained during the

deposition.  For example, Ms. DeSantie's personal address and minor son's name appear in the

deposition, as does her current salary at a private employer.  (**Zelman Aff., ¶ 5**).  In fact, if

Attorney Maurer had filed the deposition with this Court, she would have been obligated to redact the child's name pursuant to Rule 5.2(a) and Local Rule 5(e)8.

In another example, Mr. Lopez testified regarding his knowledge of information taken directly from a post-conditional offer polygraph test of a former Danbury Police Officer that would invade the person's privacy and a very sensitive medical complication suffered by another former Danbury employee.  (**Id., ¶ 6**).

During Ms. Alosco-Werner's deposition, invasive questions were asked regarding other employees.  (**Id., ¶ 7**).  These portions of the deposition were all marked "confidential."  (**Id.**).  Plaintiff's counsel specifically agreed that they should so be marked.  (**Id.**).  Nevertheless, the entire text of all transcripts was released to Mr. Alfonso and the Danbury News Times, despite the fact that much of the information would be an invasion of privacy, even under the rules of the FOIA.

It is important to note that Attorney Maurer cannot feign ignorance of FOIA.  She has used it extensively in this case, making several request under the FOIA on Danbury for various documents, some of which this Court already precluded her from obtaining during discovery because the discovery requests were not filed until the day that discovery was set to end. (**Docket Entry No. 124**).  She has also filed several FOIA complaints against Danbury, and one recently was decided on appeal by the Connecticut Superior Court.  See Office of Corp. Counsel of Danbury v. Freedom of Info. Comm'n, 2013 Conn. Super. LEXIS 1920 (Conn. Super. Ct. Aug. 23, 2013).  Thus, even if Attorney Maurer believed that she could release the transcripts freely because the City is subject to FOIA, she knows enough about the FOIA to understand that she was required to redact information as required by Conn. Gen. Stat. § 1-210(b).

Furthermore, in her letter to Defense Counsel dated November 12, 2013, Attorney Maurer intimates that neither she nor her client is culpable for the release of portions of transcripts marked "confidential" because she told the reporters that they were so marked and the reporters agreed not to "use or disseminate" them.  (**Exhibit A6, p. 2**).  This is of no matter, since it is also an admission that she did, in fact, ***knowingly*** disseminate them to the reporters despite ***knowing*** that they were marked "confidential" ***without redacting them***.  At a minimum, Attorney Maurer was obligated to contact the undersigned to determine which, if any, of the portions marked "confidential" Danbury would agree to release.  Moreover, this is not the first time that that Attorney Maurer has ignored an agreement between her and the City of Danbury to keep information confidential.  In <u>Gerlach v. Danbury</u>, Docket No. 3:09-cv-01950 (JCH), in opposing summary judgment, Attorney Maurer filed as exhibits discovery material marked "confidential" by the Defendants in violation of a mutually-agreed-upon and court-ordered confidentiality order.  (**<u>Gerlach v. Danbury</u>, 3:09-cv-01950 (JCH), Docket Entry No. 134, hereto attached as Exhibit EE**).

Plaintiff's conduct and the conduct of her attorneys have shown an intent to litigate this matter in the press.  The likely reason is to embarrass Mayor Boughton and harm his political career and/or to extort a settlement from the Defendant.  The more the case is litigated in the media, the more judicial efficiency will be compromised.  <u>See</u> <u>Stern</u>, 529 F.Supp.2d at 422.  This case has been featured in the press since its inception.  For example, in addition to the above referenced articles prompting the instant motion, the following blogs and articles have appeared:

- Just one day after the Complaint was filed in Superior Court, on July 13, 2012, using <u>www.scribd.com</u>, Mr. Robinson posted the Complaint on HatCityBLOG (<u>www.hatcityblog.blogspot.com</u>; <u>www.scribd.com/doc/99842107/Wendy-DaCosta-Boughton</u>);

- That same day, July 13, 2012, Mr. Perrefort reported on the Complaint (**Exhibit U**);

- On July 17, 2012, reporter Nick Keppler wrote an article highlighting the lawsuit for CT.com (**Exhibit V**);

- On October 17, 2012, Mr. Perrefort wrote an article entitled "City Officials Deny 'Scandalous' Claims," in which he reported on the Defendants' motion to strike claims that Mayor Boughton engaged in inappropriate behavior towards other employees (**Exhibit W**);

- On January 22, 2013, Mr. Perrefort reported on Plaintiff's arrest and the status of this pending case in the article headlined "Boughton's Former Secretary Arrested" (**Exhibit X**);

- The next day, January 23, 2013, the Associated Press also reported on the arrest and the lawsuit, and the article promptly appeared on several news cites, both local and national (**Exhibits Y, Z and AA**);

- Also on January 23, 2013, Mr. Perrefort wrote an article entitled "Boughton Denies Harassment Complaint Filed," after Plaintiff amended her Complaint, further elaborating on Mayor Boughton's alleged misconduct (**Exhibit BB**);

- On July 29, 2013, Mr. Perrefort again reported on Plaintiff's criminal proceedings as well as this lawsuit in an article entitled "Mayor's Former Assistant gets Probation" (**Exhibit CC**); and

- On the day of Mayor Boughton's deposition, September 17, 2013, Mr. Perrefort posted a blog entitled "Boughton Being Deposed Today" (**Exhibit DD**).

Mr. Robinson has also taken to disseminating this information through Twitter on his account (www.twitter.com/ctblogger) and the Danbury News Times has used Facebook to disseminate its stories on the matter as well (www.facebook.com/newstimes).

    As stated above, it cannot be ignored which deposition transcripts have been published. Only a small "snip-it" from Plaintiff's own testimony was published, and it is clear that it was chosen because of its specific content regarding Plaintiff's less-than-flattering opinion of Mayor Boughton.  Only the second day of Mr. Lopez's deposition was published, the day on which the Plaintiff had the opportunity to "rehabilitate" her witness.  It also cannot be ignored that Plaintiff

and/or her Counsel knew that the deposition transcripts at issue contained highly sensitive personal information.  In fact, Plaintiff's Counsel ___***consented***___ on the record to some of the material being marked confidential (**Exhibit A6**) and, thereafter, blatantly ignored this by releasing the transcripts.  Even if not all of the testimony is exempt from FOIA, Plaintiff had an obligation to at least discuss the matter with Defense Counsel, or move the Court to rule that the material is not confidential, prior to unilaterally releasing it to Mr. Robinson and the Danbury News Times.

It also blatantly ignores Plaintiff Counsel's obligations to third parties under Professional Rule of Conduct 4.4(a):  "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass…or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person."  Plaintiff has used the deposition process to obtain information about third parties to this litigation the disclosure of which as described herein, *inter alia*, violates those third parties' rights to privacy.  Attorney Maurer has used the media to disseminate this information, as well as information about Mayor Boughton and Ms. DeSantie – which has no evidentiary basis at all as confirmed by affidavits filed by both persons as well as their depositions – for the sole purpose of embarrassing third parties, including Ms. DeSantie, as well as embarrassing and burdening Mayor Boughton.  There was no substantial purpose related to litigation of the Plaintiff's case in releasing these unredacted transcripts.  Rather, the sole intent was to litigate the matter in the media, sway the public's view of a high-profile political figure and extort a settlement from the Defendants.

**IV.     CONCLUSION**

Wherefore, for all those reasons set forth above, the Defendants hereby respectfully move this Court to enter a protective order preventing the Plaintiff from disseminating any pretrial discovery material obtained in the above-referenced matter.

CITY OF DANBURY and MARK
BOUGHTON

By_____
     Johanna G. Zelman (ct26966)
     Rose Kallor, LLP
     750 Main Street, Suite 606
     Hartford, CT  06103
     (860) 748-4660
     (860) 241-1547 (Fax)
     E-Mail:  jzelman@rosekallor.com

17

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was filed electronically to the following counsel and mailed, via first class mail, postage prepaid, to the following pro se plaintiff named below on this 12th day of November, 2013.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Elisabeth Seieroe Maurer
Christopher S. Avcollie
Maurer & Associates, P.C.
871 Ethan Allen Highway, Suite 202
Ridgefield, CT  06877


_____
Johanna G. Zelman