UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WENDY DACOSTA, :
Plaintiff, :
v. : CASE NO. 3:12CV1011(RNC)
CITY OF DANBURY et al., :
Defendants. :

RULING AND ORDER

Plaintiff Wendy DaCosta, former executive secretary to Mayor Mark Boughton of the City of Danbury, brings this action against the City and Boughton alleging violations of her civil rights and defamation in connection with the termination of her employment. Pending before the court is defendants' Motion for Protective Order (doc. #127) and Motion for Sanctions (doc. #128).[1] For the reasons that follow, the Motion for Protective Order is granted in part and the Motion for Sanctions is denied.

I. Background

Defendants removed this action from the state court in July 2012. (Doc. #1.) During discovery, which closed in September 2013, the parties deposed ten witnesses including plaintiff Wendy DaCosta, defendant Mayor Mark Boughton, Virginia Alosco-Werner, the City's current director of Human Resources, and former city employee Carol DeSantie. During the deposition of

[1] District Judge Robert N. Chatigny referred the motions to the undersigned. (Doc. #131.)

Alosco-Werner, defendants' counsel requested that a portion of the transcript be marked as "confidential" because it concerned personnel information of a City employee who was not party to the litigation. Plaintiff's counsel consented, and defendants' counsel instructed the witness to testify freely. The witness went on to discuss multiple employees.

In September 2013, a reporter from the Danbury News-Times sent Freedom of Information Act ("FOIA") requests to the City seeking all deposition transcripts. The City replied that it would not respond formally until it had determined whether disclosure would be proper. In October 2013, without notifying defendants, plaintiff's counsel Attorney Elisabeth Maurer, in her words, "agreed to provide the transcripts to the NewsTimes and the HatCityBlog on the condition that no information designated 'confidential' would be published." (Pl.'s Br., doc. #133 at 7.) That newspaper and blog then published articles containing quotes from the depositions, and an unidentified party uploaded the transcripts of the depositions of Boughton, Lopez and DeSantie in their entirety to an internet documents library (www.scribd.com). The transcripts were removed by the website operator at the demand of defendants' counsel.

In November 2013, defendants filed the pending Motion for Protective Order and Motion for Sanctions. Defendants did not file any portion of the deposition transcripts for review with

their moving papers.[2] The court heard oral argument on November 21, 2013. (Doc. #136.) On November 26, defendants filed notice that it had released redacted deposition transcripts in response to the news reporter's FOIA request.[3]

## II. Motion for Protective Order

### A. Rule 26(c) Standard

Rule 26(c) of the Federal Rules of Civil Procedure provides that any person from whom discovery is sought may move for a protective order. Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Id. Rule 26(c)(1) specifies eight forms of available protection but the list is not exhaustive. In re Zyprexa Injunction, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007). The court has "substantial latitude to fashion protective orders." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

A party establishes "good cause" by showing that a "clearly defined, specific and serious injury" will occur in the absence of a protective order. In re Terrorist Attacks on Sept. 11,

[2]Defendants proffered the full stack of transcripts for the first time at oral argument. The court has not reviewed them. See D. Conn. L. Civ. R. 5(f)(2) (party seeking relief under Rules must file only disputed portion of the discovery). See also D. Conn. L. Civ. R. 5(e) (provisions for sealing and in camera inspection).

[3]The validity of the FOIA request and the adequacy of defendants' response are not before the court.

2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006). "To establish 'good cause' under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Burgess v. Town of Wallingford, No. 3:11-CV-1129 (CSH), 2012 WL 4344194, at *6 (D. Conn. Sep. 21, 2012) (citations and quotation marks omitted). If the moving party meets its burden of establishing good cause for a protective order, the court may balance any countervailing interests in determining whether to exercise its discretion to grant the order. Id. Such countervailing interests might include whether the order will prevent the threatened harm, whether there are less restrictive means of preventing the threatened harm, the interests of the party opposing the motion, and the interests of the public. Orillaneda v. French Culinary Institute, No. 1:07CV3206(RJH)(HBP), 2011 WL 4375365, at *4-5 (S.D.N.Y. Sept. 19, 2011) (citing Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 479 (S.D.N.Y. 1982)).

B. Discussion

Defendants seek a protective order "prohibiting the Plaintiff and her attorneys from Maurer & Associates, P.C. from further disseminating any information or documents . . . learned

and/or obtained through the course of discovery in the instant matter to outside parties, including but not limited to the media." (Doc. #127-1 at 1.) They first argue that a blanket protective order is necessary to prevent plaintiff from using discovery materials to embarrass defendant Mayor Boughton with a view to harming his political career and coercing a settlement of this case. They also argue that an order is required to protect the privacy interests and prevent embarrassment of third parties who have no connection to the litigation.

The parties devote some discussion to the question of when the public may demand access to materials obtained in the discovery process. That is not the issue before the court. The question here is not whether the public may demand access to discovery materials but whether the circumstances justify an order prohibiting the parties from publicizing discovery materials at will.[4]

[4]The public has a common law presumptive right of access to "judicial documents," which are items filed with the court that are "'relevant to the performance of the judicial function and useful in the judicial process.'" Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (quoting United States v. Amodeo ("Amodeo I"), 44 F.3d 141, 145 (2d Cir. 1995)). This presumptive right of access is at its height with respect to items that directly affect an adjudication. Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004). Discovery materials lie at the other end of the spectrum unless and until they are "presented to the court to invoke its powers or affect its decisions." See United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1050 (2d Cir. 1995). As the Supreme Court has explained,

Generally speaking, dissemination of pretrial discovery materials by the receiving party is not prohibited absent a protective order. See Burgess v. Town of Wallingford, No. 3:11CV1129(CSH), 2012 WL 4344194, at *9 n.17 (D. Conn. Sep. 21, 2012); Schiller v. City of New York, No. 1:04CV7921(KMK)(JCF), 2007 WL 136149, at *2 (E.D.N.Y. Jan. 19, 2007) (citing courts of appeal). Nonetheless, dissemination for non-judicial purposes is unusual and rightly so. The discovery rules are "a matter of legislative grace." Seattle Times, 467 U.S. at 32. They compel parties, including third parties, to divulge information "for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Id. at 34. The liberality of this process creates "a significant potential for abuse" such as delay, expense, misuse of court process and damage to the reputation and privacy of litigants and third parties. Id. at 34-35. Courts therefore must be mindful that the purpose of discovery is "to facilitate orderly preparation for trial, not to educate or titillate the public." Joy v.

---

> pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law . . . and, in general, they are conducted in private as a matter of modern practice. . . . Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984).

North, 692 F.2d 880, 893 (2d Cir. 1982). Although the details underlying a particular litigation might hold some interest for many members of the public,

> virtually all [members of the public] have an interest in ensuring that everyone in our society ha[s] access to a fair and impartial judicial system without having to pay too high a price of admission in the form of the surrender of personal privacy. Thus, courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role.

Paisley Park Enterprises v. Uptown Prods., 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999).

1. Embarrassment of Defendants

Defendants first argue that a blanket protective order is necessary to prevent plaintiff from using materials obtained in the discovery process to embarrass Mayor Boughton. They allege that plaintiff is litigating the case in the press in an attempt to harm the mayor's political career and coerce a settlement. (Defs.' Br., doc. #127-41 at 14.) "Case precedent suggests that even when a party admittedly seeks to publicly embarrass his opponent, no protection should issue absent evidence of 'substantial embarrassment' or harm." Burgess v. Town of Wallingford, No. 3:11CV1129(CSH), 2012 WL 4344194, at *11-12 (D. Conn. Sep. 21, 2012) (declining to prohibit disclosure of deposition transcript where there was no showing of harm such as misuse of information for financial or commercial gain, violation of deponent's constitutional rights, or disclosure of

trade secrets that would work clearly defined and very serious injury). This is particularly true with respect to proceedings that concern elected officials and the performance of their governmental responsibilities. See Padberg v. McGrath-McKechnie, No. 1:00CV3355(RJD)(SMG), 2005 WL 5190385, at *2 (E.D.N.Y. Apr. 27, 2005) (potential embarrassment of former mayor outweighed by public interest in actions he allegedly took as elected official); Condit v. Dunne, 225 F.R.D. 113 (S.D.N.Y. 2004) (declining to prohibit dissemination of video deposition concerning plaintiff's performance of official duties while a U.S. congressman); Flaherty v. Seroussi, 209 F.R.D. 295, 299 (N.D.N.Y. 2001) (declining to prohibit dissemination of the defendant mayor's deposition despite statements by plaintiff's attorney that he "relish[ed] the opportunity to question [the mayor] about what happened here" and would "concentrate [his] efforts on knocking [the mayor's] teeth down his throat"); cf. Paisley Park Enterprises, Inc. v. Uptown Prods., 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) (despite public interest, granting protection to rock star based on his privacy interests and defendant's intention to disseminate deposition video for commercial gain). In this case, defendants have made no showing of substantial embarrassment or harm that outweighs the public's interest in Mayor Boughton's performance of his governmental responsibilities.

Defendants also maintain that plaintiff is using the discovery process to generate bad press for them with a view to coercing a settlement. Naturally, courts look unfavorably on attempts to force a favorable settlement through abusive use of the discovery process.[5] However, the Second Circuit has cautioned that "unless such measures are needed to protect the integrity of the judicial system or a criminal defendant's right to a fair trial, a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications." Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir. 1995) (reversing imposition of sanctions where plaintiff brought nonfrivolous lawsuit in part "to exert[] pressure on defendants through the generation of adverse and economically disadvantageous publicity"). Defendants have not identified an abuse of the judicial process that would justify a blanket protective order.

2. Embarrassment of Nonparties

Defendants next contend that certain pieces of information obtained in discovery merit protection because they implicate the privacy interests of non-parties. "'Since discovery is had

[5] See, e.g., Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers, 712 F.3d 705, 719 (2d Cir. 2013) (affirming dismissal for failure to state a claim and noting that Rules 8 and 12(b)(6) help to prevent settlement extortion); Barrows v. Forest Laboratories, Inc., 742 F.2d 54, 58 (2d Cir. 1984) (affirming denial of motion to add discovery-intensive claims two and a half years after complaint was filed).

for the purposes of preparing for trial, a court may issue an order to protect potentially embarrassing information about third parties from being released before it is deemed necessary for use at trial.'" Travelers Indem. Co. v. Excalibur Reins. Corp., No. 3:11CV1209(CSH), 2013 WL 4012772, at *19 (D. Conn. Aug. 05, 2013) (quoting John Does I-VI v. Yogi, 110 F.R.D. 629, 633 (D.D.C. 1986)). Defendants list the following deposition testimony that they seek to protect: the name of a deponent's minor child, a deponent's home address and current salary at a private employer, polygraph results of a former City employee, the medical history of a former City employee, and testimony by the City's director of human resources regarding personnel matters of City employees that plaintiff's counsel agreed to mark as confidential.[6] (Defs.' Br., doc. #127-41 at 12-13.)

a. Identifying Information

Plaintiff argues that a third party does not have a legitimate interest in nondisclosure of identifying information if that information can be found elsewhere on the Internet. She is incorrect. "[T]here is a recognized 'privacy interest in keeping personal facts away from the public eye.'" Associated Press v. U.S. Dept. of Defense, 554 F.3d 274, 284 (2d Cir. 2009)

[6] Defendants supplemented this list in their reply memorandum on the eve of oral argument. (Defs.' Reply Br., doc. #135.) Because the supplemental items were not timely raised, plaintiff did not have the opportunity to address them, and the court has not considered them.

(citation omitted). This applies with particular force to the personal information of innocent third parties. See United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1050-51 (2d Cir. 1995). To this end, Rule 5.2(a) and Local Civil Rule 5(e)(8) provide that Social Security numbers, financial account numbers, dates of birth and names of minor children should be redacted from court filings. In the same vein, this court has previously required redaction of "identifying information as addresses, phone numbers, and birth dates — material which, when placed on the Internet, might provide means for unwanted access to those individuals named." Burgess v. Town of Wallingford, No. 3:11CV1129(CSH), 2012 WL 4344194, at *11 (D. Conn. Sep. 21, 2012) (ordering redaction of identifying information from published deposition transcripts); Sec. Indus. and Fin. Markets Ass'n v. Garfield, 469 F. Supp. 2d 25, 36 (D. Conn. 2007) (granting preliminary injunction against state agency enjoining it from publishing names and familial connection of certain children). The Motion for Protective Order is granted with respect to the identifying information of parties and nonparties including home addresses, email addresses, phone numbers, dates of birth, children's names, financial account numbers and social security numbers.

b. Employment and Personnel Information

Defendants also raise legitimate privacy concerns with respect to the employment and personnel information of third-party employees. "[C]ourts have generally characterized personnel files as confidential and found it appropriate to enter protective orders governing their use in litigation because of the inherent potential for harm or embarrassment if the information is revealed."[7] Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 71-72 (S.D.N.Y. 2010) (collecting cases). This includes data such as income information, medical history and disciplinary history. Id. at 73-74; see also Flaherty v. Seroussi, 209 F.R.D. 300, 304 (N.D.N.Y. 2002) (granting protective order with respect to "medical, educational, and other inherently private information concerning individual employees of the City").

Recognizing these privacy concerns, counsel in this case made an informal agreement to mark as confidential certain portions of the Alosco-Werner deposition that, according to defendants' representations, reveal sensitive personnel information of third parties. For her part, plaintiff concedes that there was a stipulation to begin marking the transcript as

[7]Connecticut state law also recognizes the sensitivity of personnel information. See Conn. Gen. Stat. 31-128f (limiting disclosure by employer of information contained in employee's personnel file).

confidential but contends that it was interpreted overbroadly because no one instructed the court reporter where to end the designation. Because the relevant portions of the Alosco-Werner transcript have not been presented to the court, it is impossible to determine whether there is good cause to issue a protective order as required by Rule 26(c). For the same reason, it is impossible to make a determination of good cause as to references to third-party employees in other depositions.

The court therefore will not fashion a tailored protective order with respect to the employment and personnel information of third parties. Nonetheless, the court directs the parties to Judge Chatigny's Standing Protective Order,[8] the terms of which govern inter alia the disclosure of portions of deposition transcripts that have been designated as confidential.

III. Motion for Sanctions

Finally, citing the court's inherent power to manage its affairs, defendants ask the court to sanction plaintiff and her counsel for disseminating the deposition transcripts.

> [F]ederal courts have "well-acknowledged inherent power to levy sanctions in response to abusive litigation practices" . . . . Because of the potency of the court's inherent power, courts must take pains to exercise restraint and discretion when wielding it.

[8]The Standing Protective Order was not in effect at the outset of this litigation. It is attached to this ruling and is available on the district court website at http://www.ctd.uscourts.gov/sites/default/files/forms/ChatignyStanding%20Protective%20Order.pdf.

> Accordingly, this court has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine . . . That bad faith must be shown by (1) "clear evidence" [of] (2) "harassment or delay or . . . other improper purposes."

DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998) (citations omitted) (affirming monetary sanctions where party's dilatory approach to discovery needlessly protracted discovery and required extensive judicial intervention). Only a particularized showing will support a finding of bad faith. United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991).

Defendants have not shown clear evidence of improper purpose in Attorney Maurer's dissemination of the deposition transcripts. The Second Circuit has cautioned that "a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications" and such measures are appropriate only where "needed to protect the integrity of the judicial system or a criminal defendant's right to a fair trial." Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir. 1995) (filing of nonfrivolous complaint "with a view to exerting pressure on defendants through the generation of adverse and economically disadvantageous publicity" did not warrant sanctions under the district court's inherent power).

The fact that Attorney Maurer disclosed information to the press after stipulating to its confidentiality is more troubling. The parties concur that Attorney Maurer's associate informally agreed to mark as confidential certain deposition testimony. Attorney Maurer then published the deposition transcript to news reporters, assertedly on the condition that the reporter would not publicize the stipulated portions. She did so without first notifying or conversing with defendants' counsel. "Since it is a fundamental purpose of the Federal Rules to remove technical procedural impediments before litigants as far as possible, it follows that such informal agreements which are designed to expedite the discovery process and to mitigate the work of the court are to be encouraged." Lyell Theatre Corp. v. Loews Corp., 91 F.R.D. 97, 104 (W.D.N.Y. 1981); see Fed. R. Civ. P. 1 (procedural rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). It was ill-considered for Attorney Maurer to renege on the stipulation and to do so without prior notice to opposing counsel.[9] Nonetheless, this lapse in judgment did not violate

[9] See McSheffery v. Faxon, Grievance Complaint #06-0035 (Conn. Statewide Grievance Panel Nov. 14, 2008):

> Even presuming the legitimacy of dissemination [of a video recording of a deposition] to the press, it would seem preferable for a party to do so in a more

any court order or rule of procedure or cause prejudice to defendants. Compare Burgess v. Town of Wallingford, No. 3:11CV1129(CSH), 2012 WL 4344194, at *5 (D. Conn. Sep. 21, 2012) (no sanctions where disclosure of deposition transcripts technically did not violate court order), with Lyell Theatre, 91 F.R.D. at 104-106 (imposing sanction of dismissal where, in addition to breaking informal agreements such that opposing party was unable to complete discovery, plaintiff broke promises to court and violated order). The court does not countenance Attorney Maurer's cavalier conduct, but sanctions are not in order.

IV. Order

The Motion for Sanctions (doc. #128) is DENIED. The Motion for Protective Order (doc. #127) is GRANTED IN PART. The court enters the following protective order pursuant to Rule 26(c):

1. The parties are directed to Judge Chatigny's Standing Protective Order, which now governs proceedings in this case. That Order is attached to this ruling and may be found at http://www.ctd.uscourts.gov/sites/default/files/forms/ChatignyStanding%20Protective%20Order.pdf. Inter alia, it sets forth

---

> equitable manner, such as a by prior notification to the opposing party. . . . This reviewing committee would strongly encourage the Respondent to be more judicious and more professional in such a situation in the future."

(Doc. #133-2 at 63.)

procedures for designating certain material as confidential, for disclosing confidential material to appropriate parties and for applying to the court for relief in the unlikely event that counsel cannot agree on implementation of the Standing Protective Order despite their good faith efforts.

2. The portions of the Alosco-Werner deposition that counsel agreed to designate as confidential shall be treated as Designated Material pursuant to Paragraph 13 of the Standing Protective Order. To the extent that the parties disagree as to the scope of the designation, they are directed to Paragraph 12.

3. All personal identifying information including home addresses, email addresses, phone numbers, dates of birth, financial account numbers, social security numbers and any names of minor children to the initials shall be treated as Designated Material under the Standing Protective Order.

4. Nothing in this order shall preclude the full and proper use of litigation materials in the judicial process pursuant to the Federal Rules of Civil Procedure, the Local Rules and the Federal Rules of Evidence.

5. The parties and their counsel are directed to cooperate in all subsequent phases of this action to secure its just, speedy and inexpensive determination with due respect for the time and resources of all parties and the court.

SO ORDERED at Hartford, Connecticut this 3rd day of March, 2014.

____________/s/______________
Donna F. Martinez
United States Magistrate Judge